# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DONALD STROMAN, # 282-365 | * |
| Plaintiff | * |
| v | * Civil Action Case No. WMN-10-644 |
| WESTERN CORRECTIONAL INSTITUTION, et al. | * |
| Defendants | * |

***

## MEMORANDUM

Pending is Donald Stroman's (Stroman) complaint as amended, pursuant to 42 U.S.C. § 1983. ECF Nos. 1 and 7. Defendants Western Correctional Institution (WCI), Sgt. W.L. Thomas, Captain Jeffrey L. True, Sgt. Robert L. Huff and Officers Thomas L. McIntyre and Justin D. Brooks,[1] through their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with verified exhibits. ECF No. 15. Stroman has filed a reply. ECF No. 17. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary. For reasons to follow, the Court will GRANT Defendants' motion for summary judgment (ECF No. 15) as to the property loss and damage claims and DENY summary judgment without prejudice as to the excessive force and due process claims, subject to refiling after counsel provides the Court with additional exhibits.

## I. Background

### A. Plaintiff's Claims

Stroman is currently confined at North Branch Correctional Institution (NBCI). He claims that: 1) excessive force was used against him during the time he was an inmate at WCI;

---

[1] Service has not been obtained on NBCI Officer Mellot who is alleged to have blocked the security camera when guards assaulted Stroman at NBCI. Complaint, ECF No. 7, p. 2. Stroman provides no details to support his claims of assault at NCBI and they will be dismissed without prejudice to refiling in a separate complaint. The Clerk will send Stroman a prisoner civil rights information and forms packet in the event he wants to pursue this claim.

2) Defendants lost or damaged his personal property; and 3) he was denied videotape evidence at his adjustment hearing at WCI.

In support of his claims, Stroman alleges the following incidents occurred at WCI on July 13, 2009. Sgt. Huff "beckoned" to Stroman after the evening meal and directed him to relinquish his ID. Complaint, ECF No. 7, p. 2. Sgt. Huff instructed Stroman to stand by a wall outside the dining room and frisk searched Stroman. Afterwards, Huff ordered Stroman to place his hands back on the wall. Stroman complied. Sgt. Huff then stated "I told you we know how to deal with your kind." *Id*. Stroman says conflicting orders followed because Captain True ordered Sgt. Huff to let Stroman go, and Sgt. Huff replied, "I'm not done with him." *Id*. Stroman told the prison guards, "One of you is going to tell me what to do, the rest will leave me alone. Am I going or staying?" *Id*.

Sgt. Huff asked Stroman what was wrong with him. Stroman responded, "I had a minor stroke a few months ago and refused treatment because I have a death wish." *Id*, p. 3. When Sgt. Huff asked Stroman what he meant, Stroman said, "I am suicidal, I wish I was dead." Sgt. Huff tried to punch Stroman who deflected the blow. *See id*.

Other prison guards attempted to take plaintiff down, but Stroman resisted. Stroman was taken to the ground, his feet were twisted and he was punched several times. Stroman stood up, then was again forced to the ground. He received three punches to the throat and fought back. Sgt. Huff then kicked Stroman's face and head. Sgt. Huff put his foot on inmate Stroman's face with his full weight and made Plaintiff's face slide across the ground. At this time, an officer of higher rank yelled it was "enough." *See id.*

Stroman was escorted to the medical unit for where he received an exam he describes as "perfunctory." Complaint, ECF No. 1 p. 4; ECF No. 7, p. 5; *see also* ECF No. 17, p. 2. [2] Stroman then was taken to WCI's Special Observation Housing ("SOH") area where he was kicked by Captain True. Lt. McIntyre threw Stroman into the cell, and other officers kicked Stroman's back, head and body. Stroman was subsequently placed in holding cell in Housing Unit #4 where he was beaten, kicked and stomped again. ECF No. 7, p. 4. Officer Brooks repeatedly told Stroman "It's not over." *Id.*

As a result of the assaults, Stroman states he suffers headaches, back and neck pain. Stroman also developed rashes from the pepper spray used on him. He claims that he was denied a shower until four days after the incident.

Stroman was transferred to NBCI on July 14, 2009, where he claims he is harassed and threatened by Sgt. Thomas and other officers.[3] Stroman claims his personal property was damaged or lost at NBCI.[4] According to Stroman, he filed a Request for Administrative Remedy (ARP) on July 23, 2009, but on August 14, 2009, he was placed on a suicide watch and his cell was searched.

---

[2] Stroman does not name medical defendants in this case. If he intend to bring claims against WCI medical providers, he may do so in a separate prisoner civil rights action under 42 U.S.C. § 1983. The court expresses no opinion as to the merit of such a proceeding, but will direct the Clerk to send Stroman a prisoner civil rights information and forms packet.

[3] Stroman does not describe the nature of the harassment and threats. Comments that may constitute verbal abuse or harassment without more do not rise to the level of an Eighth Amendment violation. *See Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, *Moody v. Grove,* 885 F.2d 865 (4th Cir.1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. *See Emmons v. McLaughlin, 874* F.2d 351, 354 (6th Cir.1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985) (calling an inmate an obscene name did not violate constitutional rights). A §1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation. Accordingly, this claim will be dismissed.

[4] The missing property includes a towel, Walkman adaptor, battery compartment cover for an alarm clock, a microwave bowl, a pencil sharpener, a mirror, laundry detergent, personal hygiene items, headphones, a soap dish, 2 pens and pencils, coffee and creamer, sugar, and candy. Stroman claims his television, beard trimmer, alarm clock, and watch were damaged. ECF No. 7, p. 5.

He states that his copy of the ARP has been missing since the search.[5]  As relief, Stroman asks to be transferred to a facility out of the Cumberland region and awarded punitive and compensatory damages.

Based on the July 13, 2009 incident, Stroman was charged in the District Court for Allegany County with second-degree assault on a Division of Correction (DOC) employee in Case Number OWOOO52689.  August 17, 2010, Stroman was tried and found not guilty.  *See* ECF No. 14.[6]

According to Stroman, Sgt. Huff provided "an entirely different set of events" at trial.  ECF No. 17, p. 4.  For example, Stoman states that Sgt. Huff testified at trial that when he attempted to handcuff Stroman, "his [Stroman's] arm was stiff.  I knew what was next so I grabbed him in a choke hold."  *Id.*  Stroman states the trial court viewed the surveillance video of the incident and found allegations that he had assaulted or in any way threatened Sgt. Huff inconclusive.  "The court went on the state that it is most unusual that several other inmates were frisk searched and allowed to leave while Plaintiff [Stroman] was on the wall."  Stroman also observes that it "is not unreasonable for a person who has suffered a stroke to have stiff limbs." *Id.*

**B.  Defendants' Response**

Defendants have submitted verified exhibits in support of their dispositive pleading.  ECF No. 15, Exhibits 1-3.[7]  They are examined below.

---

[5] Defendants state there is no record of an ARP request filed by Stroman at NBCI.  ECF No. 15, Exhibit 3, Declaration of Jared Zais.

[6] *See* Maryland Judiciary Case Search at http://casesearch.courts.state.md.us/inquiry/inquiry.  Counsel for Defendants indicates the state judge found the video inconclusive. ECF No. 15, Memorandum, n. 6. Although Defendants' counsel indicates that he will "seek to obtain a copy," he has not submitted additional information to the court.  *Id.*

[7]  No declaration from any defendant with actual involvement in the July 13, 2009 incident has been filed in this case.

1. **Serious Incident Report**

After the July 13, 2009 incident, the matter was investigated by prison officials. ECF No. 15. Exhibit 1. The resulting Serious Incident Report summarized the matter in relevant part as follows:

> At approximately 1815hrs, inmates from Housing Unit # 3 were exiting the dining room returning to their unit from the evening meal. Inmate Donald Stroman DCO #282365, 3-C-8-B (Maximum Security) was being pat searched by Sgt. R. Huff, when he, Stroman became combative and began to assault Sgt. Huff by striking him with a closed first to the facial area of Sgt. Huff. A 10-10 (fight) was called via the institutional radio. At this time numerous officers responded. As Inmate Stroman was being taken to the ground by Sgt. Huff and Officer G. Miller, Inmate Liley Gordon DOC # 326373, 3-C-25-B (Medium Security) ran towards the officers subduing Inmate Stroman. Inmate Gordon at this time struck Officer G. Miller in the head, Capt. True on the right side of the forehead and Lt. Gordon on the left temple area. Pepper spray was applied to Inmate Gordon…

*Id.*[8] The inmates were treated for injuries and placed on administrative segregation pending adjustment and offered a shower. *See id.* Stroman was charged with assaulting staff and resisting orders to be handcuffed. *See id.* Stroman sustained exposure to pepper spray and abrasions to his knees, right temporal area and elbow. *See id.* Three corrections officers required medical treatment for injuries arising from the incident. *See id.*

The Serious Incident Report concluded that prison staff acted appropriately to gain control of the situation. "The amount of force used and the method by which the force was employed to control a combative inmate is deemed consistent with prison with procedures established in the new Use of Force Manual effective March 1, 2007." *Id.*

Included in the Serious Incident Report is Sgt. Huff's statement. It reads:

> On Monday, July 13, 2009, I, R. Huff, COS, was assigned to the Escort/Relief OIC. At approximately 1815 hrs, I along with Ofc. W. Custer, CI II was performing a pat down search of Inmate Donald Stroman # 282365. Inmate Stroman repeatedly pulled his hands off the wall. I gave him several direct orders to keep his hands on the wall. Inmate Stroman again removed his hands from the wall, at which time, I

---

[8] On January 26, 2010, Inmate Liley Gordon pleaded guilty to second-degree assault on a DOC employee, and was sentenced to serve two years consecutive to his current sentence. ECF No. 15, Exhibit 2, p. 10.

ordered him to place his hands behind his back to be handcuffed. Inmate Stroman then turned around and struck me in the face with a closed fist. I along with Ofc. G. Miller, CO II, T. McIntyre CO II, and W. Custer, CO II, grasped Inmate Stroman and placed him on the ground. While we were attempting to regain control, an Inmate later identified as Liley Gordon, #326373, ran up from behind and struck several Officers with closed fisted punches. Inmate Gordon was subdued by Ofc. Yommer. After Inmate Stroman was handcuffed he was escorted to the Medical Department by Ofc. W. Custer and Ofc. D. Long were [sic] he was treated for any injuries.

*Id.* The Serious Incident Report indicates that Stroman was provided an opportunity to submit a statement but refused to do so. *See id.* On July 14, 2009, Stroman was served with notice of an adjustment hearing but refused to sign. *See id.*

### 2. Adjustment Hearing

On July 30, 2009, Stroman attended his adjustment hearing and pleaded not guilty to rule violations and made the following statement under oath:

> I was never given an opportunity to sign, I wanted the video and several witnesses but be that as it may, the officer searched me and told me to leave. Huff told me to put hands back on the wall and asked if I have a problem, the officer said leave and Huff said put hands on the wall. Huff asked what was wrong and I put hands on the wall and never had any problems or confrontation, I have a death wish, I had a stroke a few months ago and refuse treatment, he said I am suicidal and I said yes, then they jumped on me.

ECF No. 15, Exhibit 1. The hearing examiner's ruled as follows:

> Hearing Officer considered Notice of Inmate Rule Violation by Sgt. R. Huff as well as affirmed statements of Donald Stroman. Stroman's defense is that he kept his hands on the wall the entire time, and he does have a death wish as he had a stroke a few months ago and is refusing treatment. The officer asked if he was suicidal and he said he was and then the officers "jumped" on him. Hearing Officer is not persuaded by Stroman's defense. Stroman's version of the incident is not believable. It does not make sense that Stroman was compliant with the officer's instructions and indicated he was suicidal, and the officer would respond to this situation in a physical manner. Hearing Officer finds that Stroman did turn away from the wall and strike the officer in the cheek. Hearing Officer finds Stroman guilty of rules 100, 101, and 400.

ECF No. 15, Exhibit 1.[9] He was given 415 days of administrative segregation and loss of visits for 12 months. *See id.*

On August 9, 2009, Stroman appealed the examiner's decision for improper service of the Notice of Infraction and because he was not allowed to request witnesses at the hearing. *Id.* Stroman claims that he wrote to the hearing examiner to request witnesses and a copy of the videotape of the incident for the adjustment hearing. *See id.* During the hearing he "repeatedly requested the video. When the prison representative informed the officer that this was a WCI incident, she refused to postponed or continue the hearing at a later date." *Id.* Stroman appealed the adjustment decision, but his appeal was denied by the Warden on August 28, 2009.

### 3. Medical Records

Stroman's medical records show that on July 13, 2009, he was seen in the medical department after an altercation and exposure to pepper spray. Examination revealed bilateral superficial abrasions on the knees, right temporal area, and left elbow. The wounds were cleaned and antibiotics were applied. *See id.*

On July 14, 2009, after Stroman was transferred to NBCI, he indicated that he thought about suicide and psychological services were requested for him. On July 15, 2009, Stroman went to the medical unit complaining of shortness of breath and lack of medication. On July 16, 2009, he submitted a sick call request for head, elbow, knee, and chest pain. *See id.*

On July 16, 2009, a medical examination revealed that Stroman displayed open areas on his elbow and knees in the healing process without signs of infections. *See id.* Stroman was educated and advised to return to sick-call if his symptoms did not improve or became more severe.

---

[9] Stroman had been charged with violations of Rule 100, Disruptive Activity, Rule 101, Assault on Staff, Rule 104, Threatening Language, and Rule 400, Disobeying a Direct Lawful Order. See ECF No. 15, Exhibit 2, p. 6.

On August 16, 2009, a physician's assistant examined Stroman and reported suicidal ideations and hypertension. As a result, Stroman was placed in a suicide observation cell and referred to the behavioral health unit.

### 4. Property Records

Stroman's personal property was inventoried upon his transfer from WCI to NBCI. The records indicate that inmates may not keep certain types of property with them while they are on administrative segregation. Stroman requested that property designated as excess or contraband property on administrative segregation be sent to Renee Stroman of Upper Marlboro, Maryland. *See id.*

### 5. Internal Investigation Unit Report

Detective Sgt. Robert Fagan of the Internal Investigative Unit of the Department of Public Safety and Correctional Services interviewed Stroman and several correctional officers named as defendants in this case when he compiled his report. ECF No. 15, Exhibit 2. Detective Sgt. Fagan summarized his interview with Sgt. Huff as follows:

> Sergeant Huff told me that he was a 4-12 Escort Relief Officer working at the dining hall. He said that he pulled Inmate Stroman aside to search him and told him to place his hands against the wall. Sergeant Huff advised that during the process Inmate Stroman twice told him "I have a death wish." He said that the inmate came off the wall twice and faced him with closed fists. At this point Sergeant Huff advised that he grabbed one of the inmate's arms to handcuff him and this was the second time that Inmate Stroman stated "I have a death wish." Sergeant stated that everything happened real fast and the inmate struck him in his face twice. Sergeant Huff then advised the he grabbed a hold of Inmate Stroman to take him to the ground and he could see other inmates coming towards him. He said that he managed to cuff Inmate Stroman and other staff members were cuffing other inmates. Sergeant Huff showed me what appeared to the swelling and redness to his right cheek and forehead. He advised that he want to Memorial Hospital for treatment.

ECF No 15, Exhibit 2, p. 4. Captain True's statement was summarized as follows:

> Captain True advised that he and other staff watching were [sic] inmates coming from the dining hall and returning to Housing Unit 3. He that he was 20 to 30 feet from where it started and he observed Sergeant Huff put Inmate Stroman against the wall. Captain True then advised that he observed Lieutenant Gordon, Sergeant Huff and Officers Miller and McIntyre struggling with Inmate Stroman in an effort to get him to the ground. He explained that he turned around to check on other inmates when he turned back Inmate Lilly Gordon struck him with a glancing blow to his forehead.

*Id.*, p. 5.

Detective Sgt. Fagan's interview with Stroman is reported as follows:

> I then asked Inmate Stroman what he wished to tell me and he replied, "They attacked me, unjustified, excessive use of force." Basically, that's it. Inmate Stroman told me that staff told him to put his hands against the wall and he was frisked. He said that he was told to leave and then told to put his hands back on the wall. Inmate Stroman advised that he was told to leave again. He explained that Sergeant Huff told him to put his hands on the wall and another officer was telling him to leave. Inmate Stroman stated that the last thing he remembered was that he was being attacked and he was blocking the officers' punches. He said that the next thing he knew he was on the ground being maced excessively. I asked Inmate Stroman if he threw any punches and he replied 'No." Inmate Stroman told me that Sergeant Huff asked him if he had a problem with authority and he told Sergeant Huff "I got a death wish." I asked Inmate Stroman what he meant and he replied "I'm suicidal." Inmate Stroman advised that he is serving life plus 80 years and Sergeant Huff and Officer Brooks previously told him "We kill your kind around here." Inmate Stroman also advised that Captain True and Officers McIntyre and Brooks told him that it was not over.

ECF No 15, Exhibit 2, p. 4. pp. 5-6. Detective Sgt. Fagan reviewed and found the video of the incident "inconclusive" because he was unable to identify any of the participants.

## II. Standard of Review

### A. Motion to Dismiss

Defendants seek dismissal of the complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure. In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir.

9

2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a) (2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Motion for Summary Judgment

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586-87 (1986). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380.

### III. Discussion

#### A. Excessive Force

A prisoner alleging excessive force must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Whether force used by prison officials was

excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7(1992). A court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U.S. at 321. Absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S.Ct. 1175, 1178–79 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.*

Defendants argue that Stroman's injuries after the July 13, 2009 incident are consistent with a short struggle, take down, and handcuffing. They assert Stroman's medical report does not corroborate claims that he received three punches to his throat, kicks to the face and head, and was scrapped across the ground on his face. They assert Stroman's claims he was assaulted afterwards in the SOH and housing unit #4 lack support, and note that Stroman refused to provide a written statement in the medical unit on July 13, 2009, failed to mention the alleged assaults to medical authorities when he visited the medical unit on July 14, 15, or 16, 2009, and did not raise his allegations to Detective Sgt. Fagan, or to hearing examiner. Further, Stroman's July 22, 2009, medical exam showed healing abrasions to his elbow, knees and temporal area, consistent with the struggle described by corrections officers. ECF No. 15, Memorandum, pp. 7-8.

This court is obliged to viewing all facts and reasonable inferences in the light most favorable to Stroman, and as such, concludes that genuine disputes of fact remain as to claims

presented here. First, there are no affidavits from any defendant with first-hand knowledge of the incident to refute Stroman's claims that after he was subdued and handcuffed Defendants assaulted him in the SOH and Unit # 4. Additionally, questions of fact remain as to whether Sgt. Huff's actions met constitutional standards when he asked Stroman if he had a problems and Stroman responded that he had previously suffered a stroke. Further, questions remain as to whether Stroman received conflicting orders from corrections officers just prior to the use of force incident. For these reasons, the court will deny Defendants' motion for summary judgment without prejudice subject to refilling within 45 days with additional exhibits, to include, but not limited to: the surveillance tape of the dining area incident on July 13, 2009; all videotapes and records of Stroman's placement in the SOH and Unit 4 after the dining area incident; the adjustment hearing record, including recordings and transcripts of witness testimony; and a copy of the transcripts and decision of the Allegany District Court in Case Number OWOOO52689.

### B. Due Process

Prisoners are entitled to certain due process protections when the loss of good conduct time is at stake. *See Wolf v. McDonnell*, 418 U.S. 539, 556 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.*, 418 U.S. at 564–571. So long as the disciplinary hearing decision is based on "some evidence," it surpasses constitutional muster. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455(1985).

Although unstated by either party, it appears that the sanctions applied were loss of visitation and placement on administrative segregation. ECF No. 15, Exhibit 1. It does not appear that good time credits were rescinded. In light of Stroman's claims, however, the Court will direct

13

counsel for Defendants to verify the nature of the sanctions Stroman received.

**C. Property**

In order to raise a prisoner civil rights violation pursuant to 42 U.S.C. § 1983, an inmate must allege deprivation of a right secured by the United States Constitution or federal law. To the extent Stroman intends to allege that a constitutional violation occurred because his personal property was lost or damaged, the Due Process Clause merely requires the availability of an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland state courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982); *see also* Md. Code, State Government, § 12-101, *et seq.* Accordingly, Defendants are entitled to summary judgment as a matter of law as to these claims. Stroman may wish to pursue his property claims in small claims court or other appropriate state court in Maryland.[10]

**IV. Conclusion**

For the foregoing reasons, the Court will DISMISS Stroman's claims of assault and harassment by NBCI officers without prejudice, GRANT Defendants' motion for summary judgment in part as to Stroman's property claims, and DENY summary judgment in part as to the remaining excessive force and due process claims without prejudice subject to refiling within 45 days with additional exhibits and verification. A separate order follows.

/s/

  8/30/2011
Date

William M. Nickerson
Senior United States District Judge

---

[10] This Court expresses no opinion on the merit of the claims.