**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONALD STROMAN, # 282-365 *

Plaintiff *

v. * Civil Action Case No. WMN-10-644

WESTERN CORRECTIONAL *
INSTITUTION, et al.

*

Defendants

***

**MEMORANDUM**

Before the Court is a Motion for Summary Judgment filed on behalf of Defendants, Western Correctional Institution (WCI), Sgt. William L. Thomas, Captain Jeffrey L. True, Sgt. Robert L. Huff, C.O. II Thomas L. McIntyre and C.O. II Justin D. Brooks, by their attorneys.[1] Self-represented Plaintiff Donald Stroman ("Stroman") has filed an opposition. (ECF No. 29). The issues are briefed, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), as a hearing is deemed unnecessary. After considering the pleadings, exhibits, and applicable law, the Court will enter summary judgment in favor of Defendants.

## I. BACKGROUND

Stroman, who is presently an inmate at North Branch Correctional Institution, filed a complaint under 42 U.S.C. § 1983, alleging his constitutional rights were violated during incidents that occurred while he was confined at WCI. Specifically, he claims he was subjected to excessive force and denied videotape evidence at an adjustment hearing.

Stroman alleges that on July 13, 2009, Sgt. Huff ("Huff") "beckoned" to Stroman after the evening meal and directed him to show identification. (Complaint, ECF No. 7 at 2). Huff

---

1 By prior Order, the Court dismissed Stroman's claims of assault and harassment and granted Defendants' Motion for Summary Judgment in regard to Stroman's claims of lost property. Summary Judgment was denied without prejudice, subject to refiling with specified exhibits as to Stroman's remaining claims of excessive force and due process violation. (ECF Nos. 18 and 19). Facts pertinent to resolution of the remaining claims are reiterated as necessary.

instructed Stroman to stand by a wall outside the dining room and frisked him. Afterwards, Huff ordered Stroman to place his hands back on the wall and Stroman complied. Huff then told him "I told you we know how to deal with your kind." *Id*. Stroman says conflicting orders followed because Captain True ordered Huff to let Stroman go, and Huff replied, "I'm not done with him." *Id*. Stroman told the prison guards, "One of you is going to tell me what to do, the rest will leave me alone. Am I going or staying?" *Id*.

Huff asked Stroman what was wrong with him. Stroman responded, "I had a minor stroke a few months ago and refused treatment because I have a death wish." *Id*. at 3. When Huff asked Stroman what he meant, Stroman said, "I am suicidal, I wish I was dead." Huff then tried to punch Stroman, who deflected the blow. *See id*.

Other prison guards attempted to take Stroman down, but he resisted. Stroman claims that he was taken to the ground, his feet were twisted and he was punched several times. Stroman stood up, and then was forced again to the ground. He received three punches to the throat and fought back. Huff then kicked Stroman's face and head, put his foot on Stroman's face with his full weight, and pulled his face across the ground. At this time, an officer of higher rank yelled it was "enough." *See id*.

Stroman then was taken to WCI's Special Observation Housing ("SOH") area where he alleges that he was kicked by Captain True. McIntyre threw Stroman into the cell, and other officers kicked Stroman's back, head and body. Stroman was placed in a holding cell in Housing Unit #4 where he was beaten, kicked and stomped again. (ECF No. 7 at 4). Officer Brooks repeatedly told Stroman "It's not over." *Id*

Stroman claims that he suffers headaches, back and neck pain as a result of the assaults, and developed rashes from the pepper spray used on him. He claims that he was denied a shower until

four days after the incident. On July 14, 2009, Stroman was transferred to NBCI. As relief, Stroman asks for transfer to a facility outside the Cumberland region and award of damages.

Based on the July 13, 2009 incident, Stroman was charged in the District Court for Allegany County with second-degree assault on a Division of Correction (DOC) employee in Case Number OWOOO52689. On August 17, 2010, Stroman was tried and found not guilty. *See* ECF No. 14.[2]

## II. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24(1986). When this burden is satisfied, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *See Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id*. at 249. Further, a Court must construe the facts in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S.

[2] The state judge found the video inconclusive. (ECF No. 15, Memorandum, n. 6).

654, 655 (1962); *In re: Apex Express Corporation*, 190 F.3d 624, 633 (4th Cir. 1999). The Court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. Mindful that Stroman is a self-represented litigant, this Court construes his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520(1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. DISCUSSION

### A. Defendants' Pleading and Exhibits

Defendants have submitted exhibits in addition to those already filed in support of their first dispositive motion. The new exhibits include a DVD of the incident, WCI's Serious Incident Report No. 09-051; Use of Force Report No. 09-034; and Internal Investigative Unit ("IIU") Case No. 09-35-00939 for the July 13, 2009, incident. Also submitted is the Adjustment Hearing Record.[3] (ECF No. 25).[4]

#### 1. Serious Incident Report

The July 13, 2009, incident was investigated by prison officials. (ECF No. 15, Exhibit 1). The resultant report contains a summary of the incident as well as reports from Captain True, Sgt. Huff, and Sgt. McIntyre. Stroman refused to write a statement after the incident. *See id.* at 17. The summary of the incident reads in relevant part:

> At approximately 1815 hrs, inmates from Housing Unit # 3 were exiting the dining room returning to their unit from the evening meal. Inmate Donald Stroman DOC #282365, 3-C-8-B (Maximum Security) was being pat searched by Sgt. R. Huff, when he, Stroman became combative and began to assault Sgt. Huff by striking him with a closed first to the facial area of Sgt. Huff. A 10-10 (fight) was called via the institutional radio. At this time numerous officers responded. As Inmate Stroman was being taken to the ground by Sgt. Huff and Officer G. Miller, Inmate Liley Gordon DOC # 326373, 3-C-25-B (Medium Security) ran towards the

---

[3] The Division of Correction arranged for Stroman to view the DVD and listen to the CD on November 15, 2011. (ECF No. 28 at 1, Ex. 1, 2. Declaration of Donald Stroman).

[4] There was no separate transcript of the adjustment hearing. Plaintiff waived witness testimony at the hearing. (ECF No. 24, Ex. 2).

> officers subduing Inmate Stroman. Inmate Gordon at this time struck Officer G. Miller in the head, Capt. True on the right side of the forehead and Lt. Gordon on the left temple area. Pepper spray was applied to Inmate Gordon…

*Id* at 3.[5] The report indicates the inmates were treated for injuries, placed on administrative segregation pending adjustment, and offered a shower. *See id.* Stroman was charged with assaulting staff and resisting orders to be handcuffed. *See id.* Stroman sustained exposure to pepper spray and abrasions to his knees, right temporal area and elbow. *See id.* Three corrections officers required medical treatment for their injuries. *See id.* Additionally, the report concludes prison staff acted appropriately to gain control of the situation, "[t]he amount of force used and the method by which the force was employed to control a combative inmate is deemed consistent with prison procedures established in the new Use of Force Manual effective March 1, 2007." *Id.* at 9.

Huff's statement was as follows:

> On Monday, July 13, 2009, I, R. Huff, COS, was assigned to the Escort/Relief OIC. At approximately 1815 hrs, I along with Ofc. W. Custer, CI II was performing a pat down search of Inmate Donald Stroman # 282365. Inmate Stroman repeatedly pulled his hands off the wall. I gave him several direct orders to keep his hands on the wall. Inmate Stroman again removed his hands from the wall, at which time, I ordered him to place his hands behind his back to be handcuffed. Inmate Stroman then turned around and struck me in the face with a closed fist. I along with Ofc. G. Miller, CO II, T. McIntyre CO II, and W. Custer, CO II, grasped Inmate Stroman and placed him on the ground. While we were attempting to regain control, an Inmate later identified as Liley Gordon, #326373, ran up from behind and struck several Officers with closed fisted punches. Inmate Gordon was subdued by Ofc. Yommer. After Inmate Stroman was handcuffed he was escorted to the Medical Department by Ofc. W. Custer and Ofc. D. Long were [sic] he was treated for any injuries.

*Id* at 15.

Sgt. McIntyre's description of the incident states:

> On Monday, July 13, 2009 at approximately 1815 hours, while on Escort/Relief, observing Housing Unit # 3 exit the dining room # 3, during the evening chow lines,

[5] Liley Gordon pleaded guilty to second-degree assault on a DOC employee, and was sentenced to serve two years consecutive to his current sentence. (ECF No. 15, Exhibit 2, at 10).

> Sgt. R. Huff pulled Inmate Donald Stroman # 282365 (later identified by his State D.O.C. I.D. badge), to counsel him on the rules while eating in the dining room. While talking to Stroman, he became very disgruntled and aggitated [sic]. At this time, Sgt. Huff ordered Stroman to turn around and place his hands on the wall to be frisk searched. Officer W. Custer conducted the frisk search and at this point, Stroman turned his head toward Sgt. Huff and stated "mother fucker, what's wrong with you, you got a fucking death wish." Stroman immediately took his hands off the wall, and with his right hand clinched in a first, proceded [sic] to hit Sgt. Huff in the face. Sgt. Huff, Officer Custer and myself attempted to take Stoman [sic] to the ground as Stroman continued to struggle. We were able to guide Stroman to the ground, but Stroman continued to resist being handcuffed. I applied a burst of pepper spray and Officer J. Cook was able to apply handcuffs. Officer D. Long and Officer Custer escorted Stroman to the medical department for treatment of his injuries.

*Id.* at 16. The Serious Incident Report indicates that Stroman was provided an opportunity to submit a statement but refused to do so. *See id.* at 16, 19.

**2. Adjustment Hearing**

On July 14, 2009, Stroman was served with a Notice of Adjustment Hearing for charges arising from the July 13, 2009, incident. Stroman refused to sign the notice. *See id* at 17. On July 30, 2009, Stroman pleaded not guilty to rule violations and made the following statement under oath:

> I was never given an opportunity to sign, I wanted the video and several witnesses but be that as it may, the officer searched me and told me to leave. Huff told me to put hands back on the wall and asked if I have a problem, the officer said leave and Huff said put hands on the wall. Huff asked what was wrong and I put hands on the wall and never had any problems or confrontation, I have a death wish, I had a stroke a few months ago and refuse treatment, he said I am suicidal and I said yes, then they jumped on me.

(ECF No. 15, Exhibit 1 at 21). The hearing examiner ruled as follows:

> Hearing Officer considered Notice of Inmate Rule Violation by Sgt. R. Huff as well as affirmed statements of Donald Stroman. Stroman's defense is that he kept his hands on the wall the entire time, and he does have a death wish as he had a stroke a few months ago and is refusing treatment. The officer asked if he was suicidal and he said he was and then the officers "jumped" on him. Hearing Officer is not persuaded by Stroman's defense. Stroman's version of the incident is not believable. It does not make sense that Stroman was compliant with the officer's instructions and

> indicated he was suicidal, and the officer would respond to this situation in a physical manner. Hearing Officer finds that Stroman did turn away from the wall and strike the officer in the cheek. Hearing Officer finds Stroman guilty of rules 100, 101, and 400.

*Id.* [6] Stroman received 415 days of administrative segregation and loss of visits for 12 months. *See id*. He appealed the examiner's decision, citing improper service of the Notice of Infraction, and indicating he was not allowed to request witnesses at the hearing and had requested a copy of the videotape of the incident. *Id* at 23, 25. Stroman claims that he wrote to the hearing examiner to request witnesses and a copy of the videotape of the incident prior to the adjustment hearing. *See id.* at 25-26. The Warden denied the appeal on August 28, 2009.

### 3. Internal Investigation Unit Report

Detective Sgt. Robert Fagan ("Fagan") of the IIU conducted the investigation of the incident, interviewing Stroman and several correctional officers named as defendants in this case prior to compiling his report. (ECF No.15, Exhibit 2). The interview with Huff was summarized as follows:

> Sergeant Huff told me that he was a 4-12 Escort Relief Officer working at the dining hall. He said that he pulled Inmate Stroman aside to search him and told him to place his hands against the wall. Sergeant Huff advised that during the process Inmate Stroman twice told him "I have a death wish." He said that the inmate came off the wall twice and faced him with closed fists. At this point Sergeant Huff advised that he grabbed one of the inmate's arms to handcuff him and this was the second time that Inmate Stroman stated "I have a death wish." Sergeant stated that everything happened real fast and the inmate struck him in his face twice. Sergeant Huff then advised he grabbed a hold of Inmate Stroman to take him to the ground and he could see other inmates coming towards him. He said that he managed to cuff Inmate Stroman and other staff members were cuffing other inmates. Sergeant Huff showed me what appeared to the swelling and redness to his right cheek and forehead. He advised that he want to Memorial Hospital for treatment.

ECF No 15, Exhibit 2 at 5. Captain True's statement was summarized as follows:

[6] Stroman was charged with violations of Rule 100, Disruptive Activity, Rule 101, Assault on Staff, Rule 104, Threatening Language, and Rule 400, Disobeying a Direct Lawful Order. He was found guilty of all charges, except use of threatening language. (ECF No. 15, Exhibit 1 at 19, 22).

> Captain True advised that he and other staff watching were [sic] inmates coming from the dining hall and returning to Housing Unit 3. He stated that he was 20 to 30 feet from where it started and he observed Sergeant Huff put Inmate Stroman against the wall. Captain True then advised that he observed Lieutenant Gordon, Sergeant Huff and Officers Miller and McIntyre struggling with Inmate Stroman in an effort to get him to the ground. He explained that he turned around to check on other inmates when he turned back Inmate Lilly Gordon struck him with a glancing blow to his forehead.

*Id*., at 6.

Fagan interviewed Stroman on July 14, 2009, and his report of that meeting is summarized below:

> I then asked Inmate Stroman what he wished to tell me and he replied, "They attacked me, unjustified, excessive use of force." Basically, that's it. Inmate Stroman told me that staff told him to put his hands against the wall and he was frisked. He said that he was told to leave and then told to put his hands back on the wall. Inmate Stroman advised that he was told to leave again. He explained that Sergeant Huff told him to put his hands on the wall and another officer was telling him to leave. Inmate Stroman stated that the last thing he remembered was that he was being attacked and he was blocking the officers' punches. He said that the next thing he knew he was on the ground being maced excessively. I asked Inmate Stroman if he threw any punches and he replied 'No." Inmate Stroman told me that Sergeant Huff asked him if he had a problem with authority and he told Sergeant Huff "I got a death wish." I asked Inmate Stroman what he meant and he replied "I'm suicidal." Inmate Stroman advised that he is serving life plus 80 years and Sergeant Huff and Officer Brooks previously told him "We kill your kind around here." Inmate Stroman also advised that Captain True and Officers McIntyre and Brooks told him that it was not over.

*Id.* at 6. Fagan also observed and photographed minor injuries to Stroman's forehead, knees and elbow. *See id*. at 7. Fagan reviewed and found the video of the incident "inconclusive" because he was unable to identify any of the participants. *See id.*

## III. DISCUSSION

### A. Excessive Force Claim

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to establish a violation of the Eighth Amendment, an inmate must show prison officials "acted with a sufficiently

culpable state of mind (subjective component) and the deprivation suffered or injury inflicted on him was sufficiently serious (objective component)." *Id.* In a claim for excessive application of force, a claimant must meet a heavy burden to satisfy the subjective component—that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21(1986) (internal quotation marks omitted). To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind," *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In an excessive force case a court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U.S. at 321(1986). Absence of significant injury alone is not dispositive of an excessive force claim. *See Wilkins v. Gaddy*, 599 U.S. 34, 130 S.Ct. 1175, 1178 (2010). The extent of injury is one factor indicating whether or not the force used was necessary, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner was fortunate to escape serious harm. *See id.* at 1177.

The decision to use force against an inmate to restore order is "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320. Because correctional officers "must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer" from a use of force designed to restore order, when a correctional officer uses force only in "a good-faith effort to maintain or restore discipline," there is no constitutional violation. *Hudson v. McMillan*, 503 U.S. 1, 6, (1992).

To determine whether use of force constitutes "a good faith effort to maintain or restore discipline" or was undertaken "maliciously and sadistically to cause harm," courts consider: 1) “the seriousness of any injury suffered by the inmate;” 2) "the need for application of force;" 3)"the relationship between that need and the amount of force used;" 4) "the threat reasonably perceived by the responsible officials;" and 5) "any efforts made to temper the severity of a forceful response.” *Id.* at 7. (citations omitted). In short, the “core judicial inquiry [is] ... the nature of the force—specifically, whether it was nontrivial and ‘was applied ... maliciously and sadistically to cause harm.’” *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson*, 503 U.S. at 7.)

There is no dispute that Stroman was frisked and told Huff that he, Stroman, had a death wish and was suicidal. There is disagreement as to what happened next when Huff attempted to handcuff Stroman. The recording of the incident shows a struggle followed and ultimately Stroman was taken to the ground by several corrections officers and handcuffed. (ECF No. 25, Exhibit 1). A melee involving inmates ensued. Several additional officers responded and pepper spray was used. It is clear that the force used was brief and limited to regain order and ensure the security of the inmates and guards in the facility. Stroman was brought to the medical office for treatment after the incident. Under these circumstances, there is no evidence to conclude Defendants’ action were malicious or sadistic with the purpose of causing harm to Stroman.

It also bears noting that Stroman’s injuries, abrasions to the knees, right temporal area, and left elbow,[7] were consistent with the short struggle, take-down, and handcuffing shown on the recording. Stroman’s injuries clearly do not corroborate his claims of receiving multiple punches to the throat, kicks to the face and head, and having his face scrapped across the ground. Stroman’s claims he was assaulted afterwards in the SOH and housing unit #4 lack substantiation. Indeed,

[7] Stroman’s medical records show that on July 13, 2009, he was seen in the medical department after an altercation and exposure to pepper spray. The wounds were cleaned and antibiotics were applied. (ECF 15, Exhibit 1 at 31-32).

Stroman's own actions belie his claims: he refused to provide a written statement in the medical unit on July 13, 2009, failed to mention the alleged assaults to medical authorities when he visited the medical unit on July 14, 15, or 16, 2009 (ECF No. 15, Exhibit 1 at 30-42), and did not mention these allegations to Fagan or the hearing examiner. For these reasons, when the facts are viewed in the light most favorable to Stroman, as this Court must, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

**B. Due Process**

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564, (1974). Procedural due process is satisfied if the prisoner receives advance written notice of the charges, a hearing, and the right to call witnesses, and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U.S. at 564–571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Massachusetts Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Stroman was not sanctioned with loss of good conduct credits at this adjustment hearing. (ECF No. 15, Exhibit 1 at 23). In any event, the record shows that he received advance written notice of the charges against him, a hearing, and the right to call witnesses and present evidence, and a written decision. Further, he has not alleged any particularized personal harm/injury or demonstrated that the conditions of confinement on segregation posed an atypical and significant hardship on his day-to-day prison life. *See Sanding*, 515 U.S. at 484; *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). No liberty interest is implicated. Accordingly, Defendants are entitled to summary judgment as to this claim.

## IV. CONCLUSION

For these reasons, summary judgment will be entered in favor of Defendants. A separate order follows.

_3/18/13__________
Date

________/s/______________________
William M. Nickerson
Senior United States District Judge